J-A28042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　　:　　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
ALEXANDER TORRES-KUILAN　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Appellant　　　　　　　:　　No. 915 MDA 2018

Appeal from the PCRA Order May 1, 2018
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000197-2014

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:　　　　　　　**FILED DECEMBER 14, 2018**

Alexander Torres-Kuilan appeals from the order, entered in the Court of Common Pleas of Union County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.　Upon careful review, we affirm.

On March 26, 2015, Torres-Kuilan was convicted by a jury of two counts each of aggravated indecent assault and indecent assault, arising from an incident in which he molested his then-four-year-old cousin.　On January 20, 2016, Torres-Kuilan was sentenced to an aggregate term of 4 to 10 years' incarceration, followed by 5 years' probation.　His sentence included two mandatory minimum sentences pursuant to 42 Pa.C.S.A. § 9718.　Torres-Kuilan filed a post-sentence motion, in which he asserted that his mandatory minimum sentences were invalid pursuant to ***Alleyne v. United States***, 570 U.S. 99 (2013) (holding any fact that increases mandatory minimum sentence

is element of crime that must be submitted to factfinder and found beyond reasonable doubt). In its response to Torres-Kuilan's post-sentence motions, the Commonwealth agreed to resentencing, while not conceding the unconstitutionality of Torres-Kuilan's sentences.[1] On March 24, 2016, the trial court resentenced Torres-Kuilan to an aggregate term of 4 to 10 years' incarceration, followed by 5 years' probation, with credit for time served. Torres-Kuilan timely appealed and, on February 27, 2017, this Court affirmed his judgment of sentence. *See Commonwealth v. Torres-Kuilan*, 156 A.3d 1229 (Pa. Super. 2017).

On February 26, 2018, Torres-Kuilan filed a timely counseled PCRA petition in which he raised two claims of ineffectiveness of trial counsel. A hearing was held on May 1, 2018, at which time the PCRA court heard testimony from James Best, Esquire, Torres-Kuilan's trial counsel. That same day, the PCRA court issued an order dismissing Torres-Kuilan's petition. Torres-Kuilan filed a timely notice of appeal, as well as a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Torres-Kuilan raises the following issues for our review:

---

[1] At the time of Torres-Kuilan's post-sentence motions proceedings, our Supreme Court had granted allowance of appeal of this Court's decision in *Commonwealth v. Wolfe*, 106 A.2d 800 (Pa. Super. 2014), in which we deemed unconstitutional, pursuant to *Alleyne*, mandatory minimum sentences under 42 Pa.C.S.A. § 9718(a)(1). The Pennsylvania Supreme Court subsequently affirmed the decision of this Court. *See Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016).

> 1. Was it error to deny [Torres-Kuilan] post-conviction relief where he was not present for all [trial] proceedings?
>
> 2. Was it error to deny [Torres-Kuilan] post-conviction relief where a child witness/victim was colloquied with the jury present?

Brief of Appellant, at 4.

We begin by noting our standard of review in this matter:

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa. Super. 2012) (internal citations omitted).

Both of Torres-Kuilan's issues involve claims that trial counsel was ineffective. "It is settled that the test for counsel ineffectiveness is the same under both the Pennsylvania and Federal Constitutions: it is the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 [] (1984)." *Commonwealth v. Gribble*, 863 A.2d 455, 460 (Pa. 2004).

> [T]he constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Spotz*, 870 A.2d 822, 829–30 (Pa. 2005) (internal citations omitted). "If it is clear that Appellant has not demonstrated that

- 3 -

counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998)

Torres-Kuilan first claims that trial counsel was ineffective for not objecting to Torres-Kuilan's absence from the courtroom during the court's examination of Vicki Hackenburg, the witness coordinator for the child victim, which occurred as part of the court's determination as to whether the child witness qualified to testify by alternative methods pursuant to 42 Pa.C.S.A. § 5985.[2] At trial, Torres-Kuilan was properly sequestered during the child's

---

[2] Section 5985 provides as follows:

> (a) Contemporaneous alternative method.--Subject to subsection (a.1), in any prosecution or adjudication involving a child victim . . . , the court may order that the testimony of the child victim . . . be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child victim . . . , including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child victim . . . but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child victim . . . shall proceed in the same manner as normally permitted.

colloquy by the court, but was not returned to the courtroom for Hackenburg's testimony. Torres-Kuilan argues that his absence violated his constitutional right to confrontation, as well as section 5985, and that he "could have contributed to the questioning of the [w]itness [c]oordinator." Brief of Appellant, at 8. He is entitled to no relief.

> Under both the United States Constitution and the Pennsylvania Constitution, the right to confrontation specifically guarantees a person accused of a crime the right "to be confronted with the

---

> (a.1) Determination.--Before the court orders the child victim . . . to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim . . . suffering serious emotional distress that would substantially impair the child victim's . . . ability to reasonably communicate. In making this determination, the court may do all of the following:
>
>> (1) Observe and question the child victim . . ., either inside or outside the courtroom.
>>
>> (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim . . . in a medical or therapeutic setting.
>
> (a.2) Counsel and confrontation.--
>
>> (1) If the court observes or questions the child victim . . . under subsection (a.1)(1), the attorney for the defendant and the attorney for the Commonwealth have the right to be present, but the court shall not permit the defendant to be present.
>>
>> (2) If the court hears testimony under subsection (a.1)(2), the defendant, the attorney for the defendant and the attorney for the Commonwealth have the right to be present.

42 Pa.C.S.A. § 5985.

- 5 -

witnesses against him." United States Constitution, Sixth Amendment; Pennsylvania Constitution, Art. I, § 9. As the United States Supreme Court has explained, the right to confrontation is basically a trial right, and includes both the opportunity for cross-examination of the witnesses and the occasion for the jury to consider the demeanor of the witnesses. *Barber v. Page*, 390 U.S. 719, 725[] (1968). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845[] (1990).

*Commonwealth v. Gordon Charles Williams*, 84 A.3d 680, 684 (Pa. 2014).

In addition,

The United States Supreme Court has ruled that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that an accused, "even in situations where the defendant is not actually confronting witnesses or evidence against him," has a constitutional right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 [] (1934), *rev'd on other grounds*, *Malloy v. Hogan*, 378 U.S. 1 [] (1964). Accordingly, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 [] (1987). A co-extensive constitutional right exists under Article I, § 9 of the Pennsylvania Constitution. *Commonwealth v. Hill*, 737 A.2d 255, 258 (Pa. Super. 1999); *Commonwealth v. Carter*, [] 281 A.2d 75, 80 (Pa. Super. 1971) (adopting the *Snyder* "fullness of the opportunity" test).

*Commonwealth v. Lucillious Williams*, 959 A.2d 1272, 1281 (Pa. Super. 2008), *aff'd*, 9 A.3d 613 (Pa. 2010).

In *Gordon Charles Williams*, *supra*, our Supreme Court held that a section 5985 hearing is not a critical stage of a criminal proceeding and, thus, a defendant's right "to be confronted with the witnesses against him," as

guaranteed under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, is not subject to preservation or loss in a hearing to determine whether a child witness is qualified to testify by alternative methods. *Id.* at 686-87. Accordingly, Torres-Kuilan' constitutional claims fail.

Moreover, Torres-Kuilan has failed to demonstrate that he suffered any prejudice as a result of his absence during Hackenburg's testimony. "To demonstrate prejudice, [an] appellant must show there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Wright*, 961 A.2d 119, 148 (Pa. 2008), citing *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). Here, Torres-Kuilan's sole argument is that he "could have contributed to the questioning of the [w]itness [c]oordinator." Brief of Appellant, at 8. However, he does not suggest what questions he might have instructed counsel to ask or explain how the result of his trial would have been different. Indeed, the PCRA court concluded that, even without the testimony of the witness coordinator, it would have allowed the child to testify remotely. *See* N.T. PCRA Hearing, 5/1/18, at 5.[3]

_____

[3] The court stated the following at the PCRA hearing:

> [B]efore permitting the child to testify, . . . the [c]ourt must determine that the child victim would suffer serious emotional distress that would substantially impair the child victim['s] . . . ability to reasonably communicate. N[umber] 1 is to observe and

Because Torres-Kuilan is unable to establish that he was prejudiced by his physical absence during Hackenburg's testimony, his ineffectiveness claim must fail. **Wright**, **supra**.

_____

> question the child victim either inside or outside the courtroom. Based on that alone, the [c]ourt was able to make its determination. So even if we totally struck everything Ms. Hackenb[u]rg said, the [c]ourt was able to make that determination by its own observations of the child.

N.T. PCRA Hearing, 5/1/18, at 4-5. In addition, immediately following the section 5985 colloquy, the court noted the following:

> The [c]ourt did have the opportunity to observe Ms. Hackenburg attempt to bring the child into the courtroom. The back doors in the courtroom have windows in them permitting the [c]ourt to see out into the lobby area, and the child stopped short of the doors and wouldn't move. So Ms. Hackenburg's testimony that the child would not even come into the courtroom is not only credible just accepting the word of Ms. Hackenburg, but it's also consistent with the [c]ourt's own observations.

> . . .

> So the [c]ourt has had an opportunity to observe [the child victim] before at prior proceedings where she's extremely quiet and bashful and does take her little time to warm up.

> Based on all of that, I think that—and considering her responses that the size of the courtroom and the fact that [Torres-Kuilan's] presence would make it scary for her, and given her physical reactions to everything, the [c]ourt finds that being in the presence of the fact finder and [Torres-Kuilan] or either one of them would result in [the child victim] suffering serious emotional distress and would substantially impair her ability to reasonably communicate[.]

N.T. Trial, 3/25/15, at 46-47.

- 8 -

Next, Torres-Kuilan claims that trial counsel was ineffective for not objecting to the presence of the jury during the child victim's competency hearing. Torres-Kuilan asserts that counsel's failure to request the jury's removal "was not designed to further the interests of the defense" and that "in a case with utterly no physical evidence, even the unwitting endorsement of a victim/witness by the [t]rial [c]ourt could and did turn the tide to the prosecution." Brief of Appellant, at 10. Torres-Kuilan relies on our Supreme Court's decision in **Commonwealth v. Washington**, 772 A.2d 643 (Pa. 1998), which created a *per se* rule that competency hearings should be held outside the presence of the jury. Torres-Kuilan is entitled to no relief.

Although **Washington** did purport to establish a *per se* rule requiring competency examinations to be held outside the jury's presence, more than ten years after its decision in **Washington**, the Court issued **Commonwealth v. Ali**, 10 A.3d 282 (Pa. 2010), in which the facts were remarkably similar to those of the case at bar. **Ali** was an appeal from the dismissal of a PCRA petition in which the defendant had raised numerous claims of ineffectiveness, including a layered claim regarding trial counsel's failure to object to the trial court conducting the competency examination of the murder victim's minor daughter in the presence of the jury. There, the court held a brief competency hearing with the jury present. At the conclusion of counsel's questioning of the child witness, the court stated: "I find that [the child witness] is competent and she is capable of having the intelligence and understands the obligation of telling the truth." **Id.** at 298-99.

The Court began its analysis by discussing **Washington**,[4] and noted that "the fact that a child competency examination is conducted in front of the jury is not inherently prejudicial—and certainly not in a heightened **Strickland** sense. The **Washington** Court recognized as much; its *per se* rule was adopted as a prophylactic measure." **Id.** at 299. The Court further observed that the appellant did not "claim that there was anything particularly prejudicial about the substance of the brief in-court competency examination and ruling . . ., beyond the bare fact that both the examination, and the court's finding of competency, were placed before the jury." **Id.** The Court then reviewed the trial court's on-the-record statement regarding competency, observing that the court did not vouch for the credibility of the child. Rather,

> [T]the court's ruling was stated in neutral terms: the court spoke only of the child being "capable of having the intelligence and understands the obligation of telling the truth." This ruling did not suggest that the court believed that the child—who had not yet testified—would, in fact, accurately relate events and would tell the truth; rather, the court spoke narrowly of capacity and obligation. Although it is from the mouth of the judge, in substance, this is what adult witnesses convey when they take an oath—even if they intend to violate it.

_____

[4] Ali's trial occurred seven years before the Supreme Court issued its decision in **Washington**. Thus, the Court noted that trial counsel could not have been faulted for "failing to forward a request for the *per se* rule that the **Washington** majority ultimately devised." **Ali**, 10 A.3d at 298. On the other hand, the Court conceded that "there was a basis in the law in 1991 for trial counsel to request that the court, in its discretion, conduct the competency examination outside the presence of the jury" and that "there was nothing to prevent counsel from requesting an explanatory charge." **Id.** Thus, for purposes of its decision in **Ali**, the Court assumed arguable merit in the underlying layered claim.

*Id.* at 300.

The Court further noted that defense counsel's cross-examination of the child, as well as questioning by the court, exposed inconsistencies in her statements and her memory. Because her testimony occurred immediately following the competency examination, the Court could not discern any prejudice from the competency examination alone. Moreover, on multiple occasions, the trial court explicitly instructed the jury that it was the sole arbiter of witness credibility. Finally, the Court noted that, while the child was an important witness, her identification of the appellant as the killer and her general account of the killing were echoed by adult witnesses. Thus, the Court concluded that Ali had failed to establish a reasonable probability that, if only the competency examination and ruling had occurred outside the presence of the jury, the outcome of the trial would have been different.

Similarly to *Ali*, here, Torres-Kuilan has not claimed that there was anything prejudicial about the substance of the brief in-court competency examination and ruling, aside from the fact that they both occurred in the presence of the jury. The Honorable Michael H. Sholley engaged in a brief competency examination of the child victim. Judge Sholley asked her age, her birthday, and whether she knew the difference between telling the truth and telling a lie. The court asked her if one of them is good and one of them is bad. The court then provided an example of a lie and asked the victim to identify whether it was a lie, and why. Judge Sholley asked her if she would get in trouble for telling a lie or for telling the truth, and whether she knew

- 11 -

what a promise was. After the child victim answered these questions, the court concluded as follows: "The [c]ourt finds [victim] is competent to testify." N.T. Trial, 3/25/15, at 55. This statement was even more neutral than that made by the trial court in *Ali*.[5]

In addition, as in *Ali*, the child testified immediately following her competency exam and was subject to cross-examination, which exposed at least one inconsistency in her recall of events.[6] Judge Sholley also instructed the jury, both before the competency examination and during the jury charge, that it was the sole judge of credibility. Finally, as in *Ali*, although the child victim was a key Commonwealth witness, multiple adult witnesses corroborated her testimony. The child's mother testified that, when she first confronted Torres-Kuilan about the allegation, "he went pale and dropped his cell phone." N.T. Trial, 3/25/15, at 81. At a later date, following a church service, Torres-Kuilan hugged her and said "Forgive me for what I did." *Id.* at 84. He again asked her for forgiveness when they subsequently ran into

---

[5] In fact, at the PCRA hearing, Torres-Kuilan's counsel conceded that the trial court's statement affirming the child's competency was entirely neutral, stating "I don't think that you could be more mild or diffuse it [*sic*] more than what happened here, which was simply the [c]ourt finds [the victim] is competent to testify." N.T. PCRA Hearing, 5/1/18, at 9.

[6] On direct examination, the child indicated that the molestation had occurred at Torres-Kuilan's house, *see* N.T. Trial, 3/25/15, at 57, while on cross-examination, she indicated that it had occurred at her house. *See id.* at 64.

each other at a Walmart.[7] *Id.* at 85. Pennsylvania State Police Troopers Jose Monroig and James Nizinski both testified that, during their interview with Torres-Kuilan, he admitted that he had slid the victim's panties down and inserted his finger inside her vagina. *Id.* at 104, 114.

Based on the foregoing, Torres-Kuilan cannot establish that the outcome of his trial would have been different had the competency examination of the child victim been performed outside the presence of the jury. *Ali*, *supra*. Accordingly, he is entitled to no relief and the PCRA court properly denied relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2018

---

[7] These statements by Torres-Kuilan were corroborated by two additional adult witnesses, each of whom witnessed one of the interactions between Torres-Kuilan and the victim's mother.

- 13 -